# Dixie Grain Co., *et al. v.* Quinn.

*Bill to Restrain Turpentine Operation and to Redeem Land.*

(Decided February 6, 1913. Rehearing denied April 23, 1913. 61 South. 886.)

1. *Equity; Demurrer; Effect.*—On demurrer the allegations of the bill must be taken as true.

2. *Same; Relief.*—Equity will not use its powers to accomplish a useless purpose.

3. *Same; General Prayer; Mortgages.*—Although the special prayer of the bill was for redemption from mortgage foreclosure and reconveyance to the mortgagor, yet where its general purpose was to relieve complainant from the cloud upon title cast by the deed executed upon foreclosure, relief by cancelling such deed as a cloud on complainant's title could be granted under the general prayer for relief, as the allegations showing the invalidity of such deed, coupled with the general prayer for relief, were sufficient to warn respondent of such ultimate relief.

4. *Same; Multifariousness.*—A bill by the owner of land to redeem from a timber mortgage and to cancel a conveyance of the timber by a purchaser at sheriff's sale, brought against such purchaser and its grantee, as well as to enjoin the grantee from maintaining a turpentine orchard in the timber, was not multifarious as to the joinder of respondents and the relief prayed.

5. *Equity; Pleading; Demurrer.*—Although a bill may be demurrable as to a part of the relief sought against one respondent, such defect is not reached by a demurrer addressed to the bill as a whole, and hence, such demurrer was properly overruled.

6. *Same; Questions Raised.*—Whether the purchaser of property then covered by a mortgage containing a power of sale, made due inquiry as to whether the power had been executed, is a matter of defense, and cannot be raised by demurrer.

7. *Quieting Title; Relief.*—Where the bill authorized the cancellation of a deed as a cloud upon title as against the grantee in the deed, the same relief will be authorized as against all deriving their claim of title from such deed.

8. *Mortgages; Recording; Notice of Power of Sale.*—The recording of a mortgage containing a power of sale operates as notice to the world of such power, and of any title acquired by a purchaser thereunder, and hence, would deprive subsequent judgment creditors and purchasers of the protection of the registration statute, though they had no actual knowledge of the foreclosure and sale under the power, although the foreclosure deed was not recorded prior to the rendition of their judgment.

[Dixie Grain Co., et al. v. Quinn.]

9. *Same; Foreclosure; Property Conveyed.*—One who received a sheriff's deed to standing timber merely cannot convey the right to operate a turpentine orchard in connection with such timber, the purchaser's right to convey including only the right to remove it.

10. *Same; Redemption; Duly Recorded.*—In a suit to redeem land from a mortgage foreclosure sale, an allegation that the mortgage was duly recorded, without alleging the date, was sufficient, since the word, "duly" as used in connection with "recorded" meant that it was recorded within the time allowed by law.

11. *Vendor and Purchaser; Bona Fide Purchaser; Recording Mortgage; Notice of Sale.*—The rule that the recording of a mortgage containing a power of sale is notice to the world of a sale under the power does not conclusively charge subsequent purchasers with knowledge, unless such purchaser failed to make the proper inquiry, in which case the presumption of notice is conclusive.

12. *Conjunction; Trespassers; Completed Trespass.*—Where the injury to land by cutting and boxing trees for turpentine has already been done, mere recurrent trespasses in operating the business will not authorize the injunction of such trespassing, in the absence of a showing that the respondent or the trespasser is insolvent.

APPEAL from Choctaw Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by Ellen Quinn against the Dixie Grain Company and others for injunction to restrain the maintenance of a turpentine orchard upon certain lands, and to redeem. Decree for complainant, and respondents appeal. Affirmed.

The bill of complaint shows the following material facts: The complainant was and is owner and in possession of certain land, known as the Quinn plantation, on the Bigbee river. On January 2, 1900, she conveyed (?) to R. H. Vidner the stumpage of pine trees on said land, the transaction with him being evidenced by a writing in these words "Receved of R. H. Vidner $615 for the stumpage of pine timber, to cut not under eight inches off the lands at the Quinn plantation on the Bigbee river (but the trees at or near the dwelling are not to be cut). Said Vidner has the right of way to haul the logs off the land to the river. This sale is to cover the stumpage on all of Mrs. Quinn's land at this location." This paper was signed by Mrs. Quinn and wit-

nessed.   Said Vidner having died, his administrator conveyed his said timber rights and privileges to the Powe Logging Company in August, 1902.   In January, 1905, G. W. Powe, who was in fact the Powe Logging Company, mortgaged his interest in said timber to the Alabama Lumber Company, the mortgage being duly recorded, and after the law day said mortgagee foreclosed the mortgage pursuant to the conditions therein and itself purchased at the sale.   In October, 1906, said Alabama Lumber Company conveyed to Berry & Sons, a partnership, and in November, 1909, Berry & Sons individually conveyed to complainant their rights in said timber.   In the meantime, in March, 1908, before the deed to Berry & Sons was recorded, there was a sheriff's sale of the standing pine timber on the Quinn plantation under execution on a judgment against the Powe Logging Company, George W. and M. P. Powe, at which the Dixie Grain Company, one of respondents, became the purchaser for $25.   It was alleged that when said execution was levied on the interest sold none of said defendants in execution had any interest in the timber described in said sheriff's deed; they having previously conveyed the same as hereinbefore set out.   The bill alleges, on information and belief, that the respondent Williams bought of said Dixie Grain Company certain turpentine privileges on said Quinn land, and, claiming the right to maintain a turpentine orchard thereon, has entered and boxed all available timber for that purpose.   In February, 1910, complainant offered to redeem the Vidner timber rights from the Dixie Grain Company, as purchaser at said execution sale. She has also notified said Williams not to trespass on said lands, but he still claims the right to operate a turpentine orchard thereon, and continues to trespass, and to box and otherwise damage all the timber availa-

ble for turpentine purposes. Thirty dollars was paid into court for redemption, with offer to pay whatever is necessary or found due to redeem from the Dixie Grain Company. The bill denies any right of turpentine privileges on said lands in the Dixie Grain Company, and any right to convey such privileges to respondent Williams. The prayer is to enjoin said Williams from further maintaining the turpentine orchard on the land, from boxing the trees thereon, or entering upon said land, for the purpose of carrying on a turpentine or rosin business; that it be decreed that she has a right to redeem the timber herein described from sheriff's sale to the Dixie Grain Company, upon payment of the amount found due; and that the said Dixie Grain Company be required to deed to oratrix all the right, title, and interest acquired to said timber under said sheriff's sale, and to annul and avoid the conveyance made by the Dixie Grain Company to Williams, and for general relief. Respondent separately interposed demurrers which went to the bill as a whole, and on this ground were held not well taken and were overruled, and from this decree the appeal is taken.

RICH & HAMILTON, for appellant. Complainants are not entitled to redeem, as the rights of debtor and purchaser at execution were fixed at the date of such sale. —*Henderson v. Prestwood,* 116 Ala. 464; 24 Cyc. 68. Section 3505, Code 1896, does control as the Code of 1907, did not go into effect until after the sale, and it has always been the rule in this state that the statutory right of redemption is a non-assignable personal privilege, and the vendee as used in the statue is the vendee before sale and not after.—*Wallace v. Markstein,* 147 Ala. 262; *Chambers v. Pollak,* 143 Ala. 438; *Henderson v. Prestwood, supra.* The bill must show that

the complainant is certainly in one of the classes entitled to redeem.—*Henderson v. Hambrick*, 129 Ala. 596. No delivery of possession is alleged.—*Nelms v. Remson*, 89 Ala. 329; *Hanna v. State*, 84 Ala. 305; *Henderson v. Hambrick, supra; L. & N. v. Massey*, 136 Ala. 156. The bill is multifarious.—*Bentley v. Barnes*, 155 Ala. 659; *Amer. R. Co. v. Linn*, 93 Ala. 610; Sims. Ch. Pr. sec. 233. A grantor without covenants has no interest in the litigation, and is, therefore, not a proper party.—*Lewis v. Elrod*, 38 Ala. 17; *Meritt v. Phoenix*, 48 Ala. 67; *Thomas v. Jones*, 84 Ala. 303; *Mims v. Mims*, 35 Ala. 23; *Haley v. Bennet*, 5 Port. 452; *Staten v. Rising*, 103 Ala. 454.

GAILLARD & MAHORNER, for appellee. Demurrers were addressed to the whole bill, and were, therefore, properly overruled.—*Dickerson v. Winslow*, 97 Ala. 491; *Pate v. Henson*, 104 Ala. 599; *Burke v. Morris*, 121 Ala. 126; *George v. C. of Ga.*, 101 Ala. 607; *Inge v. DeMouy*, 122 Ala. 169. The bill presents grounds for equitable relief, as the complainant claims under a duly recorded mortgage with power of sale prior to appellant's judgment, and hence, appellant took subject to the mortgage.—*Jeffers v. Pease*, 52 Atl. 422. The bill contains equity as alleging facts entitling plaintiff to injunction.—*Snedicor v. Pope*, 143 Ala. 275; *Kellar v. Bullington*, 101 Ala. 271. The bill was not multifarious.—*Henry v. Carlton*, 113 Ala. 636; *Willis v. Neal*, 39 Ala. 464; 17 Enc. P. & P. 959; 27 Cyc. 1853. Complainant is within one of the classes entitled to redeem under section 3505, Code 1896.—*Robbins v. Brown*, 151 Ala. 236. The circumstances alleged avoid the necessity of alleging delivery of possession.—*Henderson v. Hambrick*, 129 Ala. 596.

[Dixie Grain Co., et al. v. Quinn.]

SOMERVILLE, J.—The material grounds of demurrer to the bill of complaint, so far as it is necessary to state them, are that it contains no equity; that it is multifarious; that its allegations are fatally self-repugnant; and that there is a misjoinder of parties defendant.

1. If the facts stated in the bill are true—and we so take them on demurrer—the respondent Dixie Grain Company did not acquire any interest in the timber by its purchase at sheriff's execution sale, because the defendants in execution had no interest in the timber which could thereby pass. The mortgage executed by them to the Alabama Lumber Company, having been duly recorded, was notice to the world, not only of the mortgage deed itself, but also of the power of sale therein contained, and equally of any title that may have been acquired by a purchaser at a sale made in execution of the power and in accordance with its terms. And although the deed of foreslosure was not recorded prior to the rendition of the judgment on which the sheriff's sale was founded, the notice resulting from the *recorded mortgage deed* was sufficient to deprive subsequent judgment creditors and purchasers of the protection of the registration statute.

The foreclosure purchaser's title is derived from the mortgage as its origin and source. It is but the stipulated result of the mortgagor's default, plainly forecast by the terms of his grant; and the purchaser's omission to record his deed does not preserve the equity of redemption in favor of those whose claims have originated subsequently to the registration of the mortgage itself, though they are specifically ignorant of an actual foreclosure.—Jones on Mortgages (6th Ed.) § 1897, pp. 851, 852; *Farrar v. Payne*, 73 Ill. 82; *Heaton v. Prather*, 84 Ill. 330. See, also, *Coles v. Allen*, 64 Ala. 98, 107.

2. In this view of the case it is clear that, as equity does not lend its powers for the accomplishment of what is useless, the bill is without equity as to the Dixie Grain Company, unless the general prayer may authorize relief by way of canceling the sheriff's deed as a cloud on complainant's title.

The special prayer is for redemption and conveyance by the redemptee to the redemptor. Relief under the general prayer by cancellation of the sheriff's deed would be in a narrow sense inconsistent with the theory of redemption, which concedes some validity to the purchaser's title.

But the clear purpose of the bill is to relieve complainant's land of the incubus of the sheriff's deed. Cancellation of that deed is as germane to that purpose as is redemption from it. And allegations which show its invalidity as against complainant, coupled with the general prayer for relief, are sufficient to warn respondent of such alternative relief, and to authorize the court to grant it.—*Rosenau v. Powell,* 173 Ala. 123, 55 South. 789. Nor would the actual insertion of such special prayer in the alternative render the bill multifarious.—Code, § 3095.

3. And if there is this equity in the bill as against the holder of the sheriff's deed it has the same equity against all derivative claims; for that relief must needs be very incomplete which, while striking down the parent, would yet spare its ill-begotten offspring.

Unquestionably Williams' claim is invalid as against complainant, not only because of his grantor's complete want of title, but because of that grantor's inability in any case to convey something which the sheriff's deed did not even pretend to carry; for certainly it is a far cry from cutting and removing timber to operating a turpentine orchard. We conclude, therefore, that in

this aspect of the bill it contains equity as to each of the respondents.

4. The bill sufficiently shows a recurrent or continuous trespassing by Williams, productive of irreparable injury to the land, and not adequately redressible by legal remedies, in accordance with the rules stated in *Kellar v. Bullington,* 101 Ala. 267, 14 South. 466, *Nininger v. Norwood,* 72 Ala. 277, 47 Am. Rep. 412, and other cases, to support the prayer for injunctive relief against him. It is worthy of note, however, that where such relief is merely incidental to some other primary equity asserted by the bill the conditions to its granting are far less stringent.

5. While the prayer for redemption is by implication inconsistent with the allegations of the invalidity of the sheriff's deed, we discover no repugnancy in the allegations themselves.

6. It only remains to consider whether the joinder of these respondents and the relief sought against each of them render the bill multifarious. We are quite clear in our conclusion that it does not, so far as relief by cancellation is concerned. And, although the bill is demurrable as to the Dixie Company, *in so far as it seeks redemption,* a demurrer on that ground cannot be properly addressed to the entire bill.

7. It is not necessary to consider other grounds of demurrer going to the asserted right of redemption, since, whatever their intrinsic merit may be, they are addressed to the bill as a whole, and were, on that account at least, properly overruled.

The decree of the chancellor is affirmed.

Affirmed.


DOWDELL, C. J., and MCCLELLAN and SAYRE, JJ., concur.

[Dixie Grain Co., et al. v. Quinn.]

## ON REHEARING.

The bill of complaint avers that the mortgage from G. W. Powe to the Alabama Lumber Company was *duly recorded,* without specifically averring *the date* of such record. It is insisted that this is not sufficient to show that it was recorded prior to the inception of the Dixie Grain Company's execution title. In January, 1906, when this mortgage was executed, the registration statute (section 1005, Code 1896) required that it be recorded within 30 days as against purchasers for value or judgment creditors without notice thereof; and the averment that it was *duly recorded* unquestionably means that it was seasonably recorded within the period allowed by law. The phrase is habitually used in this sense, and examples, casually noted, will be found in the opinions in *Steele v. Adams,* 21 Ala. 540, and *Miller v. Griffin,* 102 Ala. 613, 15 South. 238, in the headnotes to *Troy v. Smith,* 33 Ala. 469, and *Turner v. McFee,* 61 Ala. 468, and in the text of 2 Devlin on Deeds (3d Ed.) p. 1306. Certainly there is no better test of meaning than that of habitual use.

"Duly" means in due time or proper manner; in accordance with what is right, required, or suitable.— *Citizens' Bank v. Morse,* 60 Kan. 426, 57 Pac. 115: "Duly" in legal parlance, means "according to law." —*Brownell v. Town of Greenwich,* 114 N. Y. 518, 22 N. E. 24, 4 L. R. A. 685. See 14 Cyc. 1119 for numerous definitions.

It is true that, as used in the bill of complaint, the averment in question is but a conclusion of the pleader, and therefore, it may be subject to special demurrer. But in the absence of appropriate objection—and none was made—it must be held to sufficiently show a recordation of the mortgage within the time prescribed by law.

[Dixie Grain Co., et al. v. Quinn.]

A vigorous attack is made upon the doctrine that the record of a mortgage or deed of trust containing a power of sale is notice to subsequent purchasers of the execution of the power of sale, although the foreclosure deed is not recorded. The basis for the rule is to be found, of course, in the general principles underlying the law of notice, and their application to this particular case is neither novel nor unjust. The rule seems to have been stated and accepted as sound law by the leading text-writers on the subject.—Jones on Mortg. (6th Ed.) § 1897; 2 Devlin on Real Est. (3d Ed.) § 711; 24 Am. & Eng. Ency. Law, 85. Mr. Devlin says: "Where a trust deed or a mortgage with a power of sale is recorded, subsequent purchasers are compelled to inquire if any sale has been made under the power. If a sale has been made by virtue of the power, although the deed has not been recorded, a subsequent purchaser from the mortgagor does not acquire the estate. The equity of redemption is cut off by the sale."

So, also, the Supreme Court of the United States, in a case arising under the Illinois laws, has followed, without criticism and with apparent approval, the Illinois decisions on this subject.—*Mansfield v. Excelsior Refining Co.,* 135 U. S. 326, 10 Sup. Ct. 825, 34 L. Ed. 162.

Of course, this rule does not conclusively fasten upon subsequent purchasers from the mortgagor *knowledge* of the foreclosure of the mortgage and of a derivative title in some purchaser. It does, however, give him due and sufficient *notice* of these things, by which he is bound, on the assumption that reasonable inquiry of the mortgagee, or his known assignee, would elicit the facts. "Means of knowledge may be equivalent to knowledge. Whatever is sufficient to put one on his guard and call for inquiry is notice of everything to

which the inquiry would lead."—*Gamble v. B. W. Coal Co.*, 172 Ala. 669, 55 South. 190. And: "If the purchaser fails to make due inquiry, the presumption of notice is conclusive."—2 Devlin on Deeds (3d Ed.) p. 1378, citing the authorities.

Appellant insists that the rule declared will work great hardship to innocent purchasers, and will embarrass the acquisition of safe titles wherever outstanding mortgages are apparent upon the records. The obvious answer is that one who in such a case does not make reasonable inquiries is not an innocent purchaser, and is entitled to no protection; and that one who does make such inquiries, in good faith and with due diligence under the circumstances, and is informed by both mortgagor and mortgagee, or their assigns, that the power of sale has not been exercised and the mortgage title remains in statu quo, and in good faith acts upon that information, *is* an innocent purchaser, and is entitled to protection against any unrecorded title derived from a foreclosure sale. To this hazard is the holder of such an unrecorded title always subjected if he fails to record it.

If appellant has in fact conformed to these requirements, this is a matter of defense to be presented by answer to the bill, and cannot be raised by demurrer.

With respect to the sufficiency of the averments of the bill to support the prayer for a permanent injunction against the respondent Williams, a re-examination of the bill shows that the injury to the freehold by cutting and boxing the timber for turpentine purposes is an already accomplished fact; and mere recurrent entries by Williams for the operation of that business, though trespasses, are not sufficient to authorize the writ of injunction, in the absence of an averment of his insolvency. The bill is therefore insufficient in this

respect, and the original opinion will be modified accordingly.

However, the grounds of Williams' demurrer that point out this defect are addressed to the entire bill and were properly overruled, in view of the exhibition of another independent equity against him, viz., the right to a cancellation of the written deed or contract alleged to have been given him by the other respondent.

The application for rehearing will be overruled.

DOWDELL, C. J., and MCCLELLAN and SAYRE, JJ., concur.